United States District Court
Southern District of Texas
**ENTERED**
January 02, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| KATHRYN SCURRY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-24-3700 |
| | § | |
| AMEGY BANK OF TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Kathryn Scurry, representing herself, alleges that when she sought to open a business bank account for her recently formed LLC, she was told that she had to wait 90 days to do so. She sues the bank where she attempted to open the account, Amegy Bank of Texas, and two of its employees, Haydee Elsaadi and Sonja Rucker-Hines. She alleges that Amegy and its employees discriminated against her and that she has suffered damages as a result.

Amegy, Elsaadi, and Rucker-Hines moved to dismiss Scurry's original complaint. (Docket Entry No. 3). The court granted the motion, but gave Scurry leave to amend. (Docket Entry No. 13). Scurry filed an amended complaint, asserting the following causes of action: a violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*; negligent misrepresentation; "emotional distress and general inconvenience"; breach of the implied duty of good faith and fair dealing; and a failure to train or supervise. Amegy, Elsaadi, and Rucker-Hines moved to dismiss Scurry's amended complaint. (Docket Entry No. 16). The court grants the motion to dismiss the amended complaint, with prejudice because amendment would be futile. The reasons for this ruling are set out below.

**I.     Background**

Scurry's amended complaint alleges that she visited a branch of Amegy to open a business bank account and presented the documents to do so. (Docket Entry No. 15 at 2). She alleges that the branch managers denied her application, citing a policy that required the managers to wait 90 days before opening a new business account with a check. (*Id*. at 3). Scurry alleges that she "questioned the legitimacy of the policy" and contacted Amegy's corporate office to verify that the policy was legitimate. (*Id*.). Amegy's corporate office allegedly informed her that the 90-day policy only applied to DBAs, and not to LLCs. (*Id*.). When Scurry called the local Amegy branch that she had visited to inform them of her call with the corporate office, Elsaadi allegedly told her that the branch had experienced a high level of recent business banking fraud. (*Id*.). Elsaadi allegedly stated that if Scurry could provide proof of the source of the check Scurry sought to deposit to open the account, she would be able to do so. (*Id*.). Scurry alleges that this conversation with Elsaadi caused her emotional distress and she could not complete her Christmas shopping as a result. (*Id*.).

Scurry returned to the Amegy Bank branch to speak with Rucker-Hines that same day, but Rucker-Hines was unavailable. (*Id*.). Rucker-Hines called Scurry the next day and told her that bank managers have the discretion to refuse to open an account. (*Id*.). Rucker-Hines also stated that the branch had seen "a lot of fraud cases" and that it required a 90–day waiting period to open an account for a new DBA or LLC. (*Id*.). Rucker-Hines reiterated that Amegy Bank could open the account for Scurry after 90 days. (*Id*.).

Scurry alleges that in addition to filing this lawsuit, she filed complaints about Elsaadi's and Rucker-Hines's "arbitrary and discriminatory actions and behaviors" with the Consumer

Financial Protection Bureau; the FDIC Division of Depositor and Consumer Protection; the Office of the Comptroller of Currency; and the Department of Justice Civil Rights Division. (*Id*. at 3-4).

Scurry alleges that Amegy Bank's corporate headquarters informed her that there was no policy requiring an LLC to be established for 90 days before opening an account at an Amegy Bank branch. (*Id*. at 4). She also alleges that Amegy Bank's corporate office informed her that Elsaadi and Rucker-Hines had not provided her with accurate information and had undergone re-training to address this. (*Id*.). Finally, Scurry alleges Rucker-Hines made "dismissive comments" and told her that "rules are meant to be broken." (*Id*.).

## II. Analysis

### A. The Equal Credit Opportunity Act Claim

Scurry alleges that the defendants violated the Equal Credit Opportunity Act by "failing to provide equal and fair access to [Amegy Bank's] credit-related services, including business account applications." (Docket Entry No. 15 at 5). She alleges that the defendants' denial of her application "was based on arbitrary conduct and misrepresentation of a fabricated 90-day policy causing Plaintiff[']s emotional distress." (*Id*.).

"To state a claim for relief under the Equal Credit Opportunity Act, a plaintiff must allege that: (1) she was an "applicant"; (2) the defendant was a "creditor"; and (3) "the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class." *Alexander v. AmeriPro Funding, Inc*., 848 F.3d 698, 705-706 (5th Cir. 2017).

The defendants assert that Scurry's claim fails because she was not an "applicant" and Amegy Bank was not a "creditor" for the purpose of the Act. (Docket Entry No. 16 at 9). The court agrees. There are no allegations in the original or amended complaint that Scurry "applied

3

and qualified for credit and was then denied credit by [Amegy]." *Pullins v. Bank*, 2020 WL 1450560, at *4 (M.D. La. Mar. 25, 2020). Other federal courts have found that applications to open bank accounts are not credit transactions for the purpose of the Act. See *Jackson v. Hancock Whitney Bank*, 2024 WL 1655148 (E.D. La. Apr. 17, 2024); *Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230 (D. Kan. 1995). Moreover, Scurry alleges no facts indicating that she is a member of a protected class, or that she was discriminated against by Amegy, Rucker-Hines, and Elsaadi on the basis of any protected characteristic. Scurry's Equal Credit Opportunity Act claim fails.

### B. The Claim for Negligent Misrepresentation

Scurry alleges that Amegy Bank, "through its employees, misrepresented material facts by citing a non-existent '90-day policy'" as a basis for denying her application to open a new account with a check. She alleges that she "reasonably relied on Defendant's representations, expecting fair treatment and adherence to legitimate policies." (Docket Entry No. 15 at 6).

"A claim for negligent representation in Texas consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *Coleman v. Bank of New York Mellon*, 969 F. Supp. 2d 736, 750-51 (N.D. Tex. 2013) (citing reference omitted). Scurry fails to allege negligence by Amegy Bank's employees or any pecuniary losses that she suffered by relying on their representations about the need to wait 90 days to open a business account by depositing a check. Scurry alleges only that she suffered "emotional distress" and "general inconvenience" because of Elsaadi's and Rucker-Hines's

4

explanation of why Scurry had to wait 90 days to open the account. That is insufficient for a claim of negligent misrepresentation.

### C. The Claim for Emotional Distress

Scurry alleges that Amegy Bank's "arbitrary denial of Plaintiff's account application and dismissive remarks caused Plaintiff severe emotional distress. Defendant had a duty to treat its customers fairly and professionally, which it breached by engaging in arbitrary and improper conduct." (Docket Entry No. 15 at 6).

To the extent that Scurry attempts to assert a claim for negligent infliction of emotional distress, that claim must be dismissed because Texas does not recognize it as a cause of action. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 612 (Tex. 2002). To the extent Scurry attempts to assert a claim for intentional infliction of emotional distress, the claim must be dismissed because she fails to allege facts sufficient to state the claim. Under Texas law, the elements of an intentional infliction of emotional distress claim are that: "(1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Hersh v. Tatum*, 562 S.W.3d 462, 468 (Tex. 2017). Ms. Scurry has alleged no facts that would allow a factfinder to infer that Rucker-Hines's or Elsaadi's actions were "extreme and outrageous." Courts in this circuit, applying Texas law, have defined such conduct as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Thomas v. State*, 294 F. Supp. 3d 576 (N.D. Tex. 2018). Scurry's allegations as to the statements and actions by Rucker-Hines and Elsaadi fall far short of this standard. Her claims for "emotional distress" and "general inconvenience" necessarily fail as a result.

5

**D. The Claim for Breach of Implied Duty of Good Faith and Fair Dealing**

Scurry asserts that "[b]anks, like other businesses, are often required to deal with customers in good faith. Arbitrary or improper conduct fabricating the '90-day policy['] violates this duty through bad faith of a non-existent policy to deny your account breached this duty." (Docket Entry No. 15 at 6). The Texas Supreme Court has "consistently held that a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." *Shackelford v. Specialized Loan Servicing LLC*, 2024 WL 4424795, at *2 (S.D. Tex. Oct. 4, 2024)(quoting reference omitted). Texas law imposes this duty in "only a narrow class of cases." *Lomix Ltd. P'ship v. Compass Bank*, 2018 WL 11152159, at *8 (S.D. Tex. Oct. 9, 2018) (citing *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016)). The customary relationship between a bank and a customer is not in this class. And "even a relationship 'infused with elements of trust and confidence that arguably surpass[ ] the customary relationship between a bank and its customers' is not necessarily sufficient to constitute a special relationship under Texas law." *Id*. (citing *Nationsbank v. Perry Bros. Inc.*, 68 F.3d 466 (5th Cir. 1995)). Scurry has alleged no facts suggesting a special relationship between her and Amegy Bank. Her claim for breach of a duty of good faith and fair dealing also fails.

**E. The Claim for Failures to Train and Supervise**

Scurry alleges that "Amegy Bank failed to properly train or supervise the Defendants who fabricated the '90-day policy.' The Defendants acted outside normal policies and procedures." (Docket Entry No. 15 at 6). This allegation also fails to state a claim.

"For a negligent supervision claim, the plaintiff must establish that: (1) the defendant exercised some control over the contractor's work; (2) the defendant did not exercise reasonable care in supervising the contractor's activities; and (3) the plaintiff's injuries were proximately

6

caused by the contractor's negligence." *Adhikari v. KBR Inc.*, 2017 WL 4237923, at 10 (S.D. Tex. Sept. 25, 2017).   Scurry's allegations are that Rucker-Hines and Elsaadi told her that they were following a policy that Amegy Bank's corporate headquarters purportedly told her did not exist.

"To establish negligent training, a plaintiff must prove: '(1) the employer owed the plaintiff a legal duty to [train]; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiff[']s injury.'" *James v. Dasilva Transp., Inc.*, 2021 WL 863772, at *6 (S.D. Tex. Feb. 5, 2021) (quoting *Mendoza v. PGT Trucking Inc.*, 2020 WL 1902562, at *3 (W.D. Tex. Jan. 27, 2020)).  "To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.–Fort Worth 2008).

Scurry alleges no facts that could show a failure by Amegy Bank to "exercise reasonable care" in supervising Rucker-Hines's and Elsaadi's administration of the branch that Scurry visited. Nor does Scurry allege any facts that could show cognizable injury proximately caused by Amegy Bank's "failure to supervise."  "[T]here is a broad consensus among Texas courts that . . . a [negligent training or supervision] claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee [trained] pursuant to the defendant's negligent practices." *Onofre v. C.R. England, Inc.*, 2016 WL 3406196, at *4 (W.D. Tex. June 17, 2016) (quoting *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012)).  Scurry's claim fails to meet this requirement.

**III.     Conclusion**

The motion to dismiss is granted.   Scurry's claims are dismissed with prejudice, because amendment would be futile.   Final judgment is separately entered.

SIGNED on January 2, 2025, at Houston, Texas.

                                              Lee H. Rosenthal
                                          United States District Judge